STATE v. TEACHEY.

(Filed March 8, 1904).

EVIDENCE—*Homicide.*

>   In a prosecution for homicide, where defendant's father testified
>   that defendant was at home at seven o'clock on the night of
>   the shooting, and that he, the father, went to bed early and
>   did not see defendant until the next morning, and deceased was
>   shown to have been shot about nine o'clock that night, testi-
>   mony of a state's witness that a few days after the shooting
>   the father said, on hearing that the shooting was done at nine
>   o'clock, that he might as well give the case up, as he could not
>   account for defendant after seven o'clock, was inadmissible,
>   for it was neither contradictory of any statement of defend-
>   ant's father nor connected with any fact concerning the
>   shooting.

INDICTMENT against Dan Teachey, heard by *Judge O. H. Allen* and a jury, at August Term, 1903, of the Superior Court of DUPLIN County. From a verdict of guilty of murder in the first degree, and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *Stevens, Beasley & Weeks,* for the State.

*J. O. Carr* and *Jno. D. Kerr,* for the prisoner.

MONTGOMERY, J. In addition to the statement of witnesses concerning the dying declarations of the deceased, there was strong evidence that the prisoner shot and killed the deceased. His Honor, however, in the course of the trial received a certain piece of evidence, offered by the State, which was so clearly incompetent, and which may have been harmful to the prisoner, that we are on that account compelled to order a new trial.

Robert Teachey, the father of the prisoner, testified for

the defense that his son, the prisoner, was at his home at 7 o'clock on the night of the shooting, and that he (the father) went to bed early and did not see the prisoner until next morning. The deceased was shot about 9 o'clock at night. W. D. Teachey, a witness for the State, was allowed to testify, over the prisoner's objection, that, on Sunday after the shooting, he, at the house of Robert Teachey, was asked by Robert if he (W. D.) had heard anybody say at what time the shooting took place, and that he answered, "About 9 o'clock," and that in reply Robert said: "I might as well give the case up, as I have no grounds to fight upon. I cannot account for Dan after 7 o'clock." Joe Bostick testified that he heard Robert Teachey say that he could not account for Dan after 7 o'clock. At the close of his testimony the jury were instructed "That the evidence as to what Bob Teachey (who is the same as R. Teachey) said was not to be considered, unless they found from the evidence of said Teachey that he fixed Dan Teachey at home that night after 7 o'clock, and he (Bob Teachey) was thereby contradicted." Assuming that this instruction to the jury had reference to the testimony of W. D. Teachey, as well as to that of Bostick, it could not have the effect of curing the error in the admission of the testimony of W. D. Teachey. In no sense could the testimony of W. D. Teachey be considered as contradictory of any statement made by Robert Teachey as to the whereabouts of Dan on the night of the shooting. The despair of the father, Robert, in successfully defending his son against the charge of murder had no connection with any statement made by the father as to the time when he saw the son last on the night of the shooting. It was entirely independent of all reference as to the time of the shooting, and was but the individual opinion of a distressed parent about the difficulties surrounding his son's condition. It was not

134——42

contradictory of any statement made by the witness, and was not connected with any fact concerning the alleged homicide.

New trial.